COFFIN, Circuit Judge.
 

 This case marks the second occasion on which appellant Soler Chrysler-Plymouth, Inc. (“Soler”) has come before this court seeking to avoid arbitration with appellee Mitsubishi Motors Corporation (“Mitsubi
 
 *845
 
 shi”) in Japan.
 
 See Mitsubishi Motors Corporation v. Soler Chrysler-Plymouth, Inc.,
 
 723 F.2d 155 (1st Cir.1983),
 
 aff'd in part, rev’d in part,
 
 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Since its last appearance before us, Soler has filed for reorganization under chapter 11 of the Bankruptcy Code and has fought an unsuccessful battle before the United States Supreme Court, which held that the arbitration should proceed and should encompass all claims between the parties, including Soler’s antitrust claims against Mitsubishi.
 

 Soler now seeks review of an order issued by the district court vacating the automatic stay, 11 U.S.C. § 362, and directing Soler and Mitsubishi to proceed to arbitration in Japan. Soler contends that, because it is unable to afford the cost of arbitration in Japan, the district court’s order amounts to an abuse of discretion. Because we believe that the doctrine of
 
 res judicata
 
 bars Soler from raising such a claim at this time, and because we believe the district court acted properly in light of the unique circumstances of this case, we affirm the order of the district court.
 

 I.
 
 Factual Setting.
 

 The previous decisions of both this court and the Supreme Court amply detail the salient facts underlying the longstanding commercial dispute between Soler and Mitsubishi.
 
 See
 
 105 .S.Ct. at 3349-53; 723 F.2d at 157-58. The case initially came before us in 1983 on appeal from a district court order compelling arbitration of Mitsubishi’s contract claims and Soler’s counterclaims, which included allegations of Sherman Act violations. On that occasion, we affirmed the district court’s order with respect to the arbitrability of all claims between the parties
 
 except
 
 Soler’s antitrust claims.
 
 See
 
 723 F.2d at 169.
 

 By the time the parties filed their cross-petitions for certiorari with the Supreme Court in early 1984, the Japan Commercial Arbitration Association (“JCAA”) had already begun to conduct the arbitration proceedings. These proceedings continued until September 7, 1984, when Soler aborted the arbitration by filing a chapter 11 bankruptcy petition and triggering the automatic stay. The filing coincided with the completion of Mitsubishi’s case-in-chief and occurred just four days before the session at which the JCAA planned to begin hearing Soler’s presentation of its defenses and counterclaim evidence. On October 15, 1984, just over a month after Soler filed for bankruptcy, the Supreme Court granted both petitions for certiorari.
 

 Asserting that Supreme Court review of the case would be in the “best interest” of the debtor estate, Soler sought and obtained a modification of the automatic stay permitting the case to go forward. In its decision, announced on July 2, 1985,,. the Supreme Court held that all claims raised by the parties, including Soler’s antitrust claims, were subject to arbitration before the JCAA. 105 S.Ct. at 3361. The case was subsequently remanded to this court and, on August 26, 1985, we issued an order affirming in its entirety the original decision of the district court compelling arbitration of all claims.
 

 On September 20, 1985, following its victory at the Supreme Court, Mitsubishi moved the bankruptcy court to vacate the automatic stay for the purpose of allowing the arbitration to proceed in Japan. Soler responded immediately by commencing an adversary proceeding against Mitsubishi in bankruptcy court. Soler’s complaint essentially consisted of the same claims that it had originally raised before the district court in response to Mitsubishi’s initial attempt to compel arbitration. Only later, on October 8, 1985, did Soler file an “answer” responding directly to Mitsubishi’s latest motion. This answer, while generally denying the existence of any cause for vacating the stay, raised for the first time Sol-er’s argument that due to its “financial conditions ..., it should not legally nor equitably be compelled to arbitrate the different controversies pending with Mitsubishi Motors Corporation in an arbitration forum in Japan.” The answer also stated in summary fashion that Soler wished to offer undescribed testimonial and documentary evidence at the final hearing mandated by section 362(d).
 

 
 *846
 
 On October 11, 1985, Mitsubishi asked the district court to withdraw reference of the entire case (both Mitsubishi’s motion to vacate the automatic stay and Soler’s newly commenced adversary proceeding) from the bankruptcy court pursuant to 28 U.S.C. § 157(d). Just over two weeks later, Spier consented to stay all proceedings between the parties in the bankruptcy court pending the district court’s determination of the motion to withdraw reference. Although Soler claims to have prepared a memorandum further detailing its position regarding the motion to vacate the stay, it never filed this paper with either the district court or the bankruptcy court.
 

 After briefing and argument by the parties regarding the motion to withdraw reference, the district court issued an order on April 14, 1986, removing the case from the jurisdiction of the bankruptcy court. In addition, the order also vacated the stay and directed the parties to proceed to arbitration before the JCAA. Soler subsequently filed a motion for reconsideration, supported by the affidavit of Soler’s president, but the district court denied this motion on May 20, 1986. This appeal ensued.
 

 II.
 
 Res Judicata.
 

 The doctrine of
 
 res judicata
 
 “generally binds parties from litigating or relit-igating any issue that was or could have been litigated in a prior adjudication and prevents claim splitting.”
 
 Futura Development Corp. v. Centex Corp.,
 
 761 F.2d 33, 42 (1st Cir.),
 
 cert. denied,
 
 — U.S.-, 106 S.Ct. 147, 88 L.Ed.2d 121 (1985). Here, Soler failed to raise the issue of its inability to finance the arbitration in Japan before
 
 any
 
 of the courts involved in the series of proceedings initiated by Mitsubishi’s attempt to compel arbitration. Even assuming, however, that lack of knowledge excused Soler’s failure to raise the issue during its initial appearances before the district court and this court, Soler must have been aware of its alleged inability to finance the Japanese arbitration by September 7, 1984, the date on which it filed its petition for chapter 11 reorganization. By that time the arbitration hearings before the JCAA had already begun and Soler, through its Japanese counsel, had affirmatively participated in the proceedings both by filing its defenses and counterclaims and by cross-examining Mitsubishi’s principal witness.
 

 Soler, despite its apparent knowledge that it could not afford the Japanese arbitration, nevertheless sought and obtained a modification of the automatic stay that permitted the Supreme Court to review the merits of the case and determine which issues were arbitrable. Portions of Soler’s brief and oral argument before the Supreme Court, such as those referring to the “staggering” cost of arbitrating before the JCAA and the fact that Soler was a chapter 11 debtor, convince us that Soler was keenly aware, even at that time, of the issue it now advances as its central claim. Nevertheless, Soler never explicitly identified the significance of its inability to finance the arbitration during the proceedings before the Supreme Court. Given this background, our task is to determine whether Soler had an opportunity to raise this issue prior to Mitsubishi’s motion to vacate the stay, because
 
 res judicata
 
 bars later litigation of all issues that
 
 could
 
 have been raised earlier, not only those issues that were
 
 actually
 
 raised.
 

 Soler asserts that it was simply impossible to raise the issue of its inability to finance the Japanese arbitration before the Supreme Court. Reasoning from the fact that its bankruptcy filing occurred
 
 after
 
 the petitions for certiorari were filed with the Supreme Court, Soler claims that the record on appeal was complete and the issues presented for review permanently fixed well before it began to encounter extreme financial difficulties. Accordingly, Soler argues that the Supreme Court’s decision and this court’s subsequent order on remand have no preclusive effect.
 

 We are unpersuaded by Soler’s argument and view this latest round of litigation as yet another episode in Soler’s long series of misguided efforts to avoid arbitration with Mitsubishi at all costs. Soler has cited no authority to support the proposition that it was ineluctably barred from proposing that the Supreme Court consider the impact of
 
 *847
 
 Soler’s bankruptcy filing and inability to finance arbitration on the merits of the case. Furthermore, there is nothing in the record to suggest that Soler even
 
 attempted
 
 to apprise the Supreme Court of the bankruptcy issue it now contends is central to the case.
 

 If this alone were not enough, we also note that Soler neglected a second opportunity to raise the bankruptcy issue when the case was remanded to this court. It is not unusual for parties to raise new, potentially dispositive issues on remand, but Soler was content to remain silent and await a second bite at the apple before the bankruptcy court. Soler has offered no compelling argument to justify its silence at this stage of the proceedings, nor can we even conceive of one.
 

 In sum, it appears that Soler adopted a “sandbagging” strategy of the type that the doctrine of
 
 res judicata
 
 is designed to prevent. It withheld potentially pertinent information regarding its alleged inability to finance the arbitration until
 
 after
 
 the Supreme Court had decided the arbitrability issues adversely to its position and
 
 after
 
 this court had entered an order compelling the arbitration to proceed. This we cannot tolerate. Because Soler could have raised the issue of its purported financial incapacity at two prior adjudications concerned with the propriety of the arbitration, we hold that Soler is barred by the doctrine of
 
 res judicata
 
 from raising this issue now as a basis for opposing Mitsubishi’s attempt to lift the automatic stay.
 

 III.
 
 Abuse of Discretion.
 

 Despite our resolution of the principal issue in favor of Mitsubishi, we are left with the troublesome question of whether the district court abused its discretion by vacating the stay without first holding a hearing. Section 362(d) provides that a court shall grant relief from the automatic stay for cause only after notice and a hearing, 11 U.S.C. § 362(d), and Soler correctly points out that the district court did not follow the letter of this prescribed procedure in the instant case. Instead, the court simultaneously withdrew the case from the bankruptcy court and dissolved the stay based only on its review of the record compiled before the bankruptcy court.
 

 We hesitate to endorse a procedure that plainly deviates from the explicit language of the Bankruptcy Code and, under ordinary circumstances, we would resolve such a case by vacating the court’s order and remanding the case for correction of the procedural anomaly. Nevertheless, given the unique circumstances and history of this case, we cannot fault the district court for determining that the stay should be lifted expeditiously in accordance with the prior orders of the Supreme Court and this court.
 

 Here the court had the benefit of the papers filed by both parties and it was obvious then, as now, that Soler’s only colorable argument for maintaining the stay was its inability to finance the Japanese arbitration, precisely the issue it was precluded from raising at such a late date. Because Soler had identified no other viable reasons for maintaining the stay, and because it carried the burden of proving any such issue in the context of a section 362 hearing,
 
 see
 
 11 U.S.C. § 362(g), we believe that the court’s decision to vacate the stay without a hearing is justifiable. Our review of the record leads us to conclude that the district court was merely attempting to expedite a process that has been slowed time and time again by Soler’s imaginative delaying tactics. Soler has repeatedly engaged in costly litigation, appeals, and other procedural maneuvers to avoid arbitration with Mitsubishi — and appears willing, even eager, to bear the financial burden that accompanies a full-scale antitrust trial in federal court — while simultaneously asserting its inability to pay for the arbitration in Japan.
 

 Accordingly, we do not believe the district court abused its discretion in the context of this particular case by summarily granting relief from the stay and directing that the arbitration proceed as directed by the Supreme Court.
 

 Affirmed.